UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

JAMES BARRY MURPHY,

    Plaintiff,

v.

JAILER DERRAN C. BROYLES, *et al.*,

    Defendants.

Civil Action No. 5:25-242-KKC

**MEMORANDUM OPINION AND ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff James Barry Murphy is an inmate at the Pulaski County Detention Center. Proceeding without counsel, Murphy filed a civil rights complaint concerning events that allegedly occurred when he was confined at the Scott County Detention Center ("SCDC"). (R. 1). Murphy also filed a motion for leave to proceed *in forma pauperis* (R. 5). The Court concluded that Murphy lacked sufficient funds to pay the $350.00 filing fee up front and granted his motion to proceed *in forma pauperis*. (R. 7). The Court screened Murphy's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and determined that his claims against Defendants Umar and Lafever could go forward. Accordingly, the United States Marshals Service ("USMS") attempted to serve those defendants on Murphy's behalf. While Umar was served successfully (R. 10), the process receipt for Lafever indicates that he is no longer employed by SCDC and he no longer lives at the address on file with SCDC (R. 11).

Murphy has now filed an amended complaint (R. 12) and a motion for leave to proceed *in forma pauperis* (R. 13). Murphy's fee-related motion will be denied as moot because he has

already been granted permission to proceed *in forma pauperis* in this action. Murphy is permitted to file an amended complaint as a matter of course pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Thus, the Court will review the amended complaint in accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A. Those provisions require dismissal of any claim that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing Murphy's amended complaint, the Court accepts his factual allegations as true and construes his legal claims liberally in his favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Murphy lists the following defendants in his amended complaint: (1) Scott County Jailer Derran C. Broyles; (2) Captain Cannon; (3) Southern Health Partners ("SHP") and assigned nursing staff; (4) C/O Lafever; (5) C/O Venton; (6) Lt. Umar; (7) Sergeant Jolly; and (8) Sgt. Garnett. Murphy sues the first two defendants in both their official and individual capacities; the remaining defendants are sued in their individual capacities only. Construing Murphy's complaint broadly, he asserts claims under the Eighth and Fourteenth Amendments (vis-à-vis 42 U.S.C. § 1983), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. For relief, Murphy seeks monetary damages and injunctive relief, including an order directing the SCDC to comply with the ADA.

## I. Individual Capacity Claims Under 42 U.S.C. § 1983

### a. Conditions of Confinement

Murphy asserts that Defendant Broyles has "no clue" about running a jail and that the SCDC is overcrowded. (R. 12 at 3). And although Murphy does not tie the allegations directly

2

to any particular defendant, he raises several issues concerning the conditions of his confinement at SCDC. Specifically, he claims that the jail lacks handicap-accessible showers, toilets, and tables. (R. 12 at 8). He additionally reports that, after an altercation with staff, he was placed on lockdown and was not permitted to have soap, a toothbrush, and toothpaste for an unspecified period. *Id.* at 5.

The Eighth Amendment prohibits prison officials from imposing any punishment on convicted inmates that violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal citation omitted). The Due Process Clause of the Fourteenth Amendment extends this protection to pretrial detainees. *See Griffth v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020). Murphy does not specify whether he is a convicted inmate or a pretrial detainee. Thus, for the purposes of this analysis, the Court will assume that Murphy has not been convicted and that the more generous standard for pretrial inmates applies to his cruel-and-unusual-punishment claims. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (observing that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'") (citations omitted).

To state a Fourteenth Amendment conditions-of-confinement claim, a pretrial detainee must allege that he was held under conditions that posed an objectively and sufficiently serious threat to his health or safety, and that the defendant acted deliberately and recklessly in the face of an "unjustifiably high risk of harm." *Hedges v. Back*, No. 5:20-CV-509-JMH-HAI, 2021 WL 7083121, at *2-3 (E.D. Ky. Dec. 10, 2021) (citing *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021)); *Stein v. Gunkel*, No. 19-159-DLB-CJS, 2021 WL 5098685, at *2-3 (E.D. Ky. Nov. 2, 2021). Not every unpleasant experience a prisoner might endure establishes a constitutional

violation. *See Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim." *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

Crowded prison conditions do not automatically violate the constitution. *See Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *Agramonte v. Shartle*, 491 F. App'x 557, 559-60 (6th Cir. 2012). Murphy does not provide significant details about the alleged overcrowding at SCDC or explain how it adversely affected him. Thus, he fails to allege that the condition of overcrowding posed an objectively and "sufficiently serious" threat to his health or safety. And Murphy (who uses a walker) does not allege that he was unable to shower or use the toilet due to the lack of handicap facilities. Finally, while the temporary deprivation of hygiene supplies may be unpleasant, without more, it does not rise to the level of constitutional violation. *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010); *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (six-day deprivation of hygiene items was not actionable).

Murphy also alleges that Defendants Lafever and Jolly required inmates to use their walkers to navigate stairs even though an elevator was available. (R. 12 at 12). But, while Murphy alleges generally that he has mobility and balance problems, he does not allege any facts suggesting that requiring him to use his walker on the stairs violated civilized standards of decency or exposed him to an unjustifiable risk of harm. *See Estelle*, 429 U.S. at 102–03; *Brawner*, 14 F.4th at 596.

Based on the foregoing, Murphy's conditions-of-confinement claims will be dismissed.

### b. Deliberate Indifference to Serious Medical Needs

4

Construing Murphy's complaint liberally, he alleges that "[SHP] and assigned staff" were deliberately indifferent to his serious medical needs. As an initial matter, "Southern Health Partners and assigned staff" is not a person amenable to a suit for damages under 42 U.S.C. § 1983. *See Anderson v. Morgan Cty. Corr. Complex*, No. 15-6344, 2016 WL 9402910, at *1 (6th Cir. Sept. 21, 2016) (prison "medical staff" is not a "person" subject to suit under § 1983) (citing *Hix v. Tenn. Dept. of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006)). To the extent Murphy contends that unidentified individual SHP employees were deliberately indifferent to his serious medical needs, he fails to state a claim upon which relief can be granted.

Murphy appears to allege that SHP staff "took [him] off blood sugar checks," changed his insulin dosage, and refused to perform hernia surgery. (R. 12 at 12). But to state a claim for deliberate indifference, a pretrial detainee must show the existence of a sufficiently serious medical need and that the defendant disregarded that need with sufficiently culpable state of mind. *See Helphenstine*, 60 F.4th at 315 (comparing the subjective requirement in claims asserted by convicted prisoners versus those asserted by pretrial detainees). Even if Murphy's diabetes and/or hernia were considered objectively serious, he does not allege any facts indicating that cessation of glucose checks, changing his insulin dosage, and/or conservative treatment of his hernia posed an unjustifiably high risk of harm to him. Mere disagreement with the nature of one's medical treatment is not sufficient, standing alone, to constitute deliberate indifference to a serious medical need. *See Westlake v. Lucas*, 537 F.2d 857, 850 (6th Cir. 1976); *Alberson v. Norris*, 458 F.3d 762, 765–66 (8th Cir. 2006). Thus, Murphy's claims against SHP and its staff will be dismissed.

### c. Failure to Protect

Murphy's failure to protect claim is difficult to follow.  As best the Court can tell, Murphy alleges that Defendants Cannon, Umar, Venton, and Lafever failed to protect him when they housed him alongside inmates in protective custody.  (R. 12 at 8).  He also alleges that "officers like Bear . . . just ask control to open the doors not thinking that people are on lockdown for a reason." *Id.* at 9.  However, to establish a failure to protect claim, the plaintiff must allege facts indicating that defendant's failure to take reasonable steps to abate a risk of harm actually caused the plaintiff to sustain injuries.  *See Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 729 (6th Cir. 2022).  Murphy has not alleged such facts and, therefore, his failure to protect claims necessarily fail.

### d. Excessive Force

Murphy alleges that Defendants Lafever and Umar used excessive force against him when moving him to another cell.  (R. 12 at 4).  In explaining this legal conclusion, Murphy reports that Lafever "stood [him] up" and cursed at him. *Id.*  It is well established that "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey,* 832 F.2d at 954.  Indeed, "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tenn. Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir.2012) (citing *Ivey,* 832 F.2d at 955).

That being said, Defendant Umar will be required to respond to Murphy's excessive-force claim alleging that Umar grabbed his hair and slammed his face into a mirror. *See* R. 12 at 4.

### e. Denial of Administrative Grievance Process and Access to the Courts

6

Murphy alleges that Defendant Garnett denied his grievances and only allowed him to file one grievance per week because he was "abusing the system." (R. 12 at 9). These allegations do not state a cognizable claim for the deprivation of a constitutionally-protected right because prisoners do not have a "constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corrs.*, 128 F. App'x 441, 445 (6th Cir. 2005). Likewise, Murphy's alleged lack of access to an effective administrative remedy process could not have violated his right of access to the Courts. This is because the administrative exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See Ross v. Blake*, 578 U.S. 632, 642 (2016); *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). If Murphy were improperly denied access to administrative remedies, the process would be rendered unavailable and therefore the lack of exhaustion would not be a barrier to Murphy filing suit.

Murphy also suggests that Defendants Broyles and Garnett refused to provide indigent inmates with postage, writing materials, and other items needed to prepare court filings. (R. 12 at 10). It is true that "[p]rison officials are charged with the responsibility of assuring that inmate access to the courts is 'adequate, effective, and meaningful.'" *Patterson v. Mintzes*, 717 F.2d 284, 288 (6th Cir. 1983) (quoting *Bounds v. Smith*, 430 U.S. 817 (1977)). However, prisoners suing state officials for violating their constitutional right to meaningful access to the courts must demonstrate actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Murphy does not allege that defendants' actions resulted in actual injury to pending or contemplated litigation and, therefore, these claims must be dismissed.

## II. Official Capacity Claims under 42 U.S.C. § 1983

Murphy's official capacity claims against Defendants Broyles and Cannon are construed as civil rights claims against Scott County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official capacity suits are not suits against the official personally "for the real party in interest is the entity"). Scott County cannot be held liable under § 1983 for the actions of employees based on the doctrine of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In order to prevail on his §1983 claims against Scott County, Murphy would have to allege that a county policy or custom caused him to be deprived of a constitutional right. *See id; Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Because Murphy has not alleged facts plausibly suggesting his constitutional rights were violated due to a Scott County policy or custom, his official capacity claims must be dismissed.

The Court also notes that an inmate's claim for declaratory or injunctive relief ordinarily becomes moot when he is transferred away from the institution where the underlying complaint arose. *See, e.g., Heyward v. Cooper*, 88 F.4th 648, 656-57 (6th Cir. 2023); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Since Murphy is no longer housed at the SCDC, his requests for injunctive relief from unspecified officials at that facility will be dismissed.

### III. Americans with Disabilities Act and Rehabilitation Act

Murphy also asserts claims under Title II of the ADA, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. (R. 12 at 6, 8). Construing Murphy's complaint liberally in his favor, the Court assumes that Murphy asserts his ADA and Rehabilitation Act claims against Defendant Broyles in his official capacity. *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Under the case law of this circuit and our sister circuits, the proper defendant in a Title II

8

claim is the public entity or an official acting in his official capacity."). To state a claim under the ADA, a plaintiff must allege that he or she (1) is a qualified individual with a disability; (2) who was excluded from participation in the services, programs, or activities of a public entity; and (3) was excluded by reason of such disability. *See Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 681-82 (6th Cir. 2016) (citing 42 U.S.C. § 12132). A claim under the Rehabilitation Act requires these three elements, plus an allegation that the state program receives federal funds. *Burns v. City of Columbus, Ohio*, 91 F.3d 836, 841 (6th Cir. 1996).

In addition to prohibiting intentional discrimination, the ADA and RA require public entities to make certain accommodations for disabled people to ensure their access to government programs and activities. *See Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 912 (6th Cir. 2004). However, assuming *arguendo* that Murphy has sufficiently alleged that he is disabled, he has not alleged facts that plausibly state a claim for discrimination when the remaining elements are considered. While Murphy contends that SCDC lacked handicap-accessible showers, cells, toilets, and tables, he does not allege that he was excluded (or even limited) from using such facilities or otherwise participating in SCDC's services, programs, or activities because of his disability. Thus, his ADA and RA claims must be dismissed.

### IV.

"An amended complaint supersedes an earlier complaint for all purposes." *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013). Thus, Murphy's amended complaint (R. 12) replaces his original complaint (R. 1). Since Murphy is a *pro se* prisoner who has been granted permission to proceed *in forma paupers*, the Clerk's Office and the

9

United States Marshals Service ("USMS") will assist him in serving summons and a copy of the amended complaint on Defendant Umar.

Based on the foregoing, it is **ORDERED** as follows:

1. Murphy's motion for leave to proceed in forma pauperis (**R. 13**) is **DENIED** as moot.

2. Murphy's claims against Defendants Broyles, Cannon, Southern Health Partners ("SHP") and assigned nursing staff, Lafever, Venton, Jolly, and Garnett are **DISMISSED**. These defendants are **TERMINATED** as parties to this action.

3. Murphy's claim for injunctive relief against unidentified officials at SCDC is **DISMISSED**.

4. Murphy may **PROCEED** with his claim for monetary damages under 42 U.S.C. § 1983 for excessive force against Defendant Umar.

5. A Deputy Clerk shall prepare one (1) Service Packet for service upon Defendant Umar. The Service Packet shall include:

    a. a completed summons form;

    b. the amended complaint (R. 12);

    c. this Memorandum Opinion and Order; and

    d. a completed USM Form 285.

6. A Deputy Clerk shall deliver the Service Packet to the USMS in Lexington, Kentucky and note the date of delivery on the docket.

7. The USMS is directed to personally serve Defendant Umar at the Scott County Detention Center through arrangement with that facility.

8. Following the completion of service, Umar must respond to Murphy's amended complaint in accordance with Rule 12 of the Federal Rules of Civil Procedure.

This the 9th day of October, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY